Counsel for Mr. Walker, do you want to approach? Great. All right, good morning and may it please the court. Pablo Almazan for Thomas Walker and I'll aim to reserve two minutes for rebuttal. Very well. So before turning to the focus order, I just wanted to very briefly emphasize that although Ferreira says that a defendant's lack of legal training is not relevant to his right to proceed pro se, the state court of appeal here nevertheless viewed Mr. Walker's lack of legal training as a relevant factor for it to consider in affirming the denial of his request. So on that ground alone, basically that the state court reached a conclusion contrary to Ferreira on a question of law. Is your position that the court can never consider the relevancy of the fact that you got a defendant who's facing multiple trials and sophisticated DNA evidence? That's not a factor that the court can consider, even if it's not the controlling factor. So they could they can consider his lack of legal training specifically. I would say they could potentially consider, you know, how complex the case is, but not his ability to, you know. The problem with your client was that he was accused of having committed a number of break ins, sexual assaults and so on. But he didn't even know what the charges were. He couldn't tell the judge what the charges were that he was facing in what, three different cases? No, I mean, I would argue that he did know when in the colloquy with the court. The court was really getting at specifics that they're like, OK, basically tell me the fact by fact. To determine whether or not he was prepared to go to trial in a short period of time. That's how I understood the purpose of the colloquy. Am I wrong? Well, I mean, the court also asked, you know, are you going to be prepared to adequately cross examine a DNA expert? And then ultimately, when Mr. Walker does say, you know, I will be ready and prepared to start trial. The court answers, you know, no, I don't believe you. I don't believe that's right. That's a factual determination, is it not? To which we have to give deference unless it's clear error. Well, again, I would say if the underlying assumption there is that the court is viewing the reason why he won't be ready is because of his lack of legal training. Or here is like lack of ability to handle a DNA case. That itself is improper. So so that the court cannot consider. I agree with you. If that was the only reason.  I my reading of the transcript was that that was one of the factors that the Court of Appeals look to in order to determine whether or not it was a knowing involuntary waiver for and whether it was time. Sure. So I would say even even in the consideration of whether it's timely, they just can consider his lack of legal training at all at all. Because if that's the case, then almost any defendant would never really have the ability to exercise his right to proceed. Yeah. Sure. Sure. Sure. Understood. Like to have you address the subject of the focus. Yeah. Sure. Sure. So, you know, turning to the focus order for nearly 30 years now, this court has read for Reda as clearly establishing that a request made weeks before trial is timely. And obviously, in Moore and Tamplin, we know that that encompasses a request made 14 days before trial. And I know that there is an issue pointed out in the state's answering brief where they note that potentially Williams v. Taylor poses some issue with Moore. I would say just to quickly answer the focus order, Moore and Tamplin are still good law. The only issue with Moore is really that footnote three where it talks about, you know, they got it wrong at that point. They viewed the contrary to language from 2250-41 as only applying to questions of law. And then subsequently in Williams v. Taylor, the Supreme Court clarified that, no, it also covers, you know, mixed questions of law and fact. But if we look at the actual, like, analysis that Moore did, it was completely, you know, in line with the mythology you analyze in Williams v. Taylor where they basically looked at the facts. So it's a mixed question of law and fact, but isn't it heavily fact-driven? For the timeliness, no. Right. You know, so, I mean, so basically what Moore did is it looked at the two cases that said in both cases it's knowing, intelligent, unequivocal. And then we know that in both cases the request was made weeks before trial. Right. And in that sense it was identical. That's the lack of clarity in Ferretti itself, is it not? Is what constitutes a timely request? Sure. The Supreme Court didn't answer that question. Indirectly, it sort of did. Well, it said if it's made several weeks before trial, but we're arguing here over days, right, 14, 15, or 16. So I would say, you know, in Ferretti they did mention, you know, here Mr. Ferretti made his request weeks before trial, and there's no dispute that it was knowing and intelligent. And then they say under these circumstances. So here you would concede that a request made a week before trial would not be timely? I would say it's not clearly established that that would be untimely. So I guess a different way to look at it, we don't know when something becomes untimely, you know, whether it be five days before, one day before day of trial. Right. I would argue that, yeah, states or the state courts do have discretion in terms of developing some kind of test to determine whether it's timely. But when it's weeks before, you know. So two or more? Yeah, I mean, I would read it as, you know, weeks is in the plural. To me that would mean two or more. If we're, you know, really going to, you know, try to fine tune that, I think. Well, we're splitting hairs here. Yeah, right. That's the problem with the cases that we're trying to interpret. And I think, you know, just thinking policy-wise, I think the practical ramifications of viewing FRERTA as weeks before language so narrowly, like practically speaking then, a lot of defendants are really never going to have the right to proceed per se, because I think for the most part, you know, these requests are made when they get closer to trial. They have some disagreement with their counsel. You know, they feel much more confident representing themselves at that point. And for whatever reason, they can't get rid of the counsel. And so then they're like, well, if it's me who's going to be serving time in jail or in prison, I'd rather make the call. And so, you know, to me, to then say, oh, is weeks actually mean like three weeks or like four weeks or whatever, just really cuts against the actual right itself. And I think, again, for almost 30 years, this court has consistently read as weeks before is timely. And, you know, in Morton Tamplin, it was 14 days or more before. Let me ask you about Tamplin, because I'm going to anticipate what they're going to argue. And I'm not going to hold you to 10 minutes. I'm going to give a little more time.  So in Tamplin, there's a lot of even assuming this and assuming that. If I was going to read Tamplin the way I think they're going to want us to read Tamplin, the narrowest reading of Tamplin is that it's de novo review and that Mr. Tamplin was basically his own lawyer for months before the request was made. And they're going to say that's very different than this case, because this case is Edpo review. And there wasn't this situation where he was representing himself for months before the request was made. What's your response to their anticipated reading of Tamplin? I mean, my response is that whether or not he was representing himself before the actual request was considered made is irrelevant under Feretta. Well, hold on. The Ninth Circuit certainly didn't think it was irrelevant. They spent several paragraphs on that very point. So if it was irrelevant, why was why was it in the opinion? I mean, I think for them, they were trying to make conceitually. They were saying that this poses a somewhat different case. So it was relevant. Yeah. Yeah. Explain to me why if it's relevant, why does it not differentiate that case from your case? Sure. So they do positively cite to Moore. And obviously in Moore, we know that, you know, it wasn't a situation where he was representing himself all the way until, you know, he officially makes his request. So to them, ultimately, what they did get to is like, look, in Moore, our circuit has already held that a request made, you know, in that case, it was 16 days before. But weeks before is timely. And ultimately, when it came down to the timeliness issue itself, assuming it was under a review, the court found that. OK, here in our case, you know, Tamplin made his request 14 days before. So we're essentially bound by Moore and finding that that was. So your view is that Tamplin effectively endorsed Moore and that we can decide this case based on Moore. Correct. Yes. OK. So even with all the detours that Tamplin takes, you're saying there's still a straight road through to Moore. Yeah. And and again, like almost every other case we cite in the briefs, right? That's in the reply brief positively cites Moore and like Marshall B. Taylor and all subsequent cases. So, I mean, that's been the view of this circuit for almost 30 years now. And unless the court has any other questions, I'll reserve. I just have going back to the weeks before. You know, I understand the idea that weeks before could be understood to be two weeks because weeks is plural. The minimum is two. But it can't just be a possible interpretation. Doesn't it have to be clearly established? So can something be ambiguous and clearly established? I would say, you know, under Marshall v. Rogers, circuits are free to determine what's been clearly established. And, you know, from, you know, from more than on, we have this circuit at least has read weeks before as meaning two weeks or more. You know, ultimately, at the end of the day, if the Supreme Court wants to say something different, they can. But under the law of the circuit that, you know, we're required to follow weeks before it does equal two weeks or more. All right. We'll give you the two minutes. Awesome. Thank you, counsel. May it please the court. Deputy Attorney General Amanda Lloyd for respondent. As this court concluded in Marshall Stenson and Clark, established a general timeliness standard and did not define when a self-representation request becomes untimely or define the precise contours of the timeliness element. Under this court may only look to Supreme Court decisions to determine what constitutes clearly established federal law. It also requires that pre-existing Supreme Court authorities squarely address the issue at hand and provide a clear answer. The Freda decision does not provide us with a clear answer about the timeliness of a self-represent representation request. At most, it discusses that the request in Freda made well before the date of trial and weeks before trial was timely, quote, under these circumstances, meaning that the court looked directly at the circumstances of facts and circumstances in the Freda case to determine if it was timely. It did not create a bright line rule, as counsel is suggesting, of 14 days. While an appellate panel may look to its decisions to see if the Supreme Court has clearly established a rule, it may not broaden or further refine a rule that the Supreme Court has not announced. Focusing on the focus letter of Moore and Tamplin, Moore was governed by pre-EDPA law. It was not subject to EDPA deference, and it was partially overturned later by Williams v. Taylor. Additionally, Tamplin was decided de novo, also without giving EDPA deference to the state courts, finding that there was no state court decision on the merits on untimeliness in that case. Because Moore and Tamplin were not decided under EDPA, this court should follow Marshall, Stinson, and Clark in finding that Freda established only a general timeliness standard. So let me ask you, because, I mean, if I were you, I'd be saying exactly the same thing. It makes total sense to me. But there is some language in Tamplin that is very helpful to the other side. So when they invoke Moore, if you're us and you want us to write something in your favor, how do we write it consistent with Tamplin? Well, again, Tamplin is a de novo case. It didn't give EDPA deference. But it does, I mean, the court does say we're not going to give deference, but even if we did, we would still come out in the same way. And, again, I would go back to the fact that the Supreme Court has not clearly established the parameters of the general timeliness requirement. So under EDPA, habeas relief is not available unless a state court error was obvious and indisputable. And given the general timeliness discussion in FRERETA and the facts that it applied under these circumstances, there is no state court decision, there is no obvious or indisputable error, especially in this case where below we have both the magistrate and district court disagreeing over this exact issue. That shows that there is no obvious or indisputable error. Well, let me ask you this. So in Tamplin, page 1089, it writes, the court wrote the following. But even if the state habeas court had relied on timeliness and even if we were to give EDPA deference, we would interpret FRERETA as we did in Moore. That is, we would conclude that the state habeas court reached a result clearly contrary to FRERETA. That's the language your opposing counsel is relying on. How do we get around that? We get around that by looking to the Marshall, Stinson, and Clark, where just recently in 2023, Clark stated, in the absence of clear Supreme Court precedent defining when a FRERETA request becomes untimely, a California state court is free to determine that issue under California's reasonable time standard. It cited Marshall also and said that although FRERETA established a timing element, there is no Supreme Court case directly establishing when a request is timely. So I think we get there by what EDPA requires federal courts to do, which is to only look to whether the state courts issued a decision contrary to or unreasonably replied clearly established federal law. And as all the courts agree, FRERETA is the only United States Supreme Court case that can be considered clearly established federal law on the timeliness issue. I'm with you on that. I mean, I agree. If we had a clean slate, I agree with you. Right? If we have a clean slate, I agree with you. The problem is, for your side, is Tamplin has language in there that is contrary to what you're saying. And so we're trying to say, is there a way to essentially disregard Tamplin, even though it's a decision of our court that we're stuck with? Everything you're saying to me makes sense. It's just Tamplin is not consistent with that, at least as I read it. So help me help. That's why we issued the focus order. So help us. Help me understand how we can say what you want to say, which I said makes sense to me, but when Tamplin says what the paragraph I just read in Tamplin. And you didn't cause this. I'm not saying you created this mess. I want to be clear about that. We're looking for help. You inherited the mess, and we've got to deal with it. You love the mess. You've got to deal with the mess. So how do we deal with the mess? Sorry, I'm looking for that specific. Can you point me to that language one more time? Yeah, sure. I think it's on 1089 of the case, and I'll pull it up here for a second. Maybe in a future generation we'll have a big screen that I can put on the screen for you. It would be a lot easier. But the passage is on page 1089, and it says, Even if the state habeas court had relied on untimeliness, and even if we were to give EDPA deference, we would interpret Feretta as we did in Moore. That is, we would conclude that the state habeas court reached a result clearly contrary to Feretta. And then it cites Marshall. So the question is, is that what do we do with that language? Again, it's going back to Moore, which is a pre-EDPA case. So the court made an error by relying on a pre-EDPA case. Actually, it was de novo, so it could have looked to circuit authority for its decision, but this case is not. So it's confusing because of the EDPA shield. I guess what I'm saying is that it may be that it's wrong. I may agree with you that it's wrong, but we're stuck with it. So the response can't be Tamplin is wrong. It has to be Tamplin doesn't control, and here's why. And that's what I'm trying to get at. Why doesn't Tamplin control? Our position is that Tamplin does not control because it's a de novo case, and anything else post that is dicta. It's not necessary to the court's decision. Once it decided the issue based on de novo law, that was the end of the issue. And given that Moore was a pre-EDPA case, this court should look to its other authorities, including Marshall, Stenson, and Clark, to get to the general timeliness standard. So you're suggesting that the Tamplin panel reached out to decide an issue that was not necessary once it had decided that on de novo review it was untimely? Yes. Given the lack of Supreme Court authority squarely addressing when a self-representation request may be deemed untimely, the California Supreme Court established a standard requiring a FRERTA request to be made a reasonable amount of time before trial. And the California Court of Appeal reasonably applied that standard. It's important to note that FRERTA faced a single count of grand theft as compared to the numerous serious charges Walker was facing spread amongst two trials for which he would receive multiple life terms. The request made by FRERTA was also made the day after charges were filed, whereas here we have Walker waiting four years to make his request. And also during discussions with the judge, he said he had not received all of the discovery and he would try to be ready. Given all of these factors and the significant differences between the cases and the fact that the United States Supreme Court clearly decided FRERTA based under these circumstances which were present in that case, this court should defer to the state court's determination, which was not contrary to any Supreme Court law. Unless the court has any questions. All right, thank you, Counsel. So just really quickly, you know, Moore and Tamplin are binding law on this court. Can you address that last point that she made because that does resonate with my reading of Tamplin. There really was no reason for the panel to reach out and decide that issue. We sometimes, when we're drafting these opinions, refer to them as a double-barreled approach. And this is the second shot of the double-barreled shotgun. But the question is, is that dicta or is it necessary to the holding of the court? So to back up a little, in that case, the state was arguing that it was untimely. So in a way, I believe the court did properly address that question. But ultimately, I mean, what they're doing is they're explaining what the clearly established law is. You know, regardless of how they come out on the question, I do believe that, you know, it's not dicta when it's basically explaining this is how our circuit reads the law. And that's still valid. But your position has to be that two or more weeks constitutes weeks before trial. Sure. And I mean, also, I mean, it's not just Tamplin, right? We also have Moore v. Calderon that says that as well. And I know counsel mentioned that that was a pre-AEDPA case. A little more background there, the habeas case there was pending when AEDPA was enacted. So there was this open question as to whether or not AEDPA applied retroactively to those cases. So at that point in time, it was really necessary for the court to also address, you know, under AEDPA deference, how would we come out? And, you know, obviously they came out the way we're arguing this circuit has read for 30 years, that weeks before equals two or more weeks. Tamplin essentially, you know, supported that by positively siding to Moore. And I see no reason why this court should not follow the precedent set for Moore and Tamplin. All right. Thank you very much, counsel. I want to thank both of you for your briefing and your argument in this interesting case. This matter is submitted and we'll call the final case for today.
judges: TALLMAN, OWENS, Montenegro